IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FOREST PRODUCTS INDUSTRIES,  ) <br> INC., a Missouri Corporation,  ) <br> ) <br> Plaintiff,  ) <br> ) <br> vs.  ) <br> ) <br> MALNOVE, INC., a Nebraska  ) <br> Corporation and CONAGRA FOODS,  ) <br> INC., a Nebraska Corporation,  ) <br> ) <br> Defendants.  ) | 8:04CV37 <br><br> **MEMORANDUM AND ORDER** |

This matter is before the court on a motion for summary judgment filed by defendant ConAgra Foods, Inc. ("ConAgra"), Filing No. 30, and on a motion for summary judgment filed by defendant Malnove, Inc. ("Malnove"), Filing No. 32.[1]  The court having considered the motions, the plaintiff's responses, the defendants' replies, and the relevant materials and law, now determines that ConAgra's motion for summary judgment should be granted and that Malnove's motion for summary judgment should be denied as moot.

**Undisputed Facts**

Forest Products Industries, Inc. ("Forest") is a Missouri corporation that operates as a broker of packaging materials for manufacturers by and through its representative and president, Terry Wolfsberger.  See Filing No. 1, Complaint at ¶¶ 1-4.  Malnove is a Nebraska corporation engaged in the manufacturing and selling of packaging products for consumer goods and Richard Lawson is its sales supervisor.  *Id.*  In the 1980's, Forest and Malnove established a business relationship and Forest facilitated Malnove's sales of packaging products to ConAgra, a corporation with its principal place of business in

---

[1]Pursuant to a notification to the court, on November 18, 2005, by counsel for defendant Malnove that the case against Malnove has settled, the court denies Filing No. 32 as moot.

Omaha, Nebraska. See Filing No. 1, Complaint at ¶¶ 5-7; Filing No. 31, ConAgra's Brief in Support of Motion for Summary Judgment at ¶ 2; Filing No. 41, Ex. 4, Wolfsberger's Dep. at 9:15-25. ConAgra purchases packaging products for its food products. *Id.*

Initially, Forest and Malnove's business relationship did not include a written contract. See Filing No. 41, Ex. 4, Wolfsberger's Dep. at 13:2-17. However, in 1998, the parties formalized their relationship by entering into a written contract ("the brokerage contract") that would expire in January, 2001. See Filing No. 1, Complaint at ¶ 7; Filing No. 34, Ex. 1(f) at ¶ 4; Filing No. 41, Ex. 1, Lawson's Dep. at 19:16-23; 20:17-25; 21:1-3; 32:15-20; 33:1-19. Under the contract, Forest specifically would provide brokerage services, i.e., serve as a middleman for Malnove on the ConAgra account. *Id.* In return, Forest would earn a 3% commission of Malnove's sales to ConAgra. *Id.* In August 2000, the parties renewed their brokerage contract and extended it for two additional years. See Filing No. 1, Complaint at ¶ 8, Filing No. 41, Ex. 1, Lawson's Dep. at 20;17-25; 32:15-20; 33:1-19.

In January 2001, ConAgra's director of packaging, John Kaiser, became aware of the fact that Forest served as a broker for Malnove's sales to ConAgra. See Filing No. 41, Ex. 2, Kaiser's Dep. at 10:19- 11:1. In June 2001, Forest's president, Mr. Wolfsberger, met with Malnove's sales supervisor, Mr. Lawson, to discuss Forest's relationship with Malnove. See Filing No. 41, Ex. 4, Wolfsberger's Dep. at 25:22- 26:15. Subsequently, that same month, Malnove sent a letter to Forest stating: "as per the specific request of ConAgra, we will no longer use Forest Products industries as our representative to ConAgra Frozen Food." See Filing No. 34, Ex. 1(g). In that letter, Malnove also offered Forest $100,000 in exchange for a release whereby Wolfsberger would agree that Forest was "not entitled to

2

any other compensation from Malnove for any reason whatsoever" and would release Malnove from "any and all obligations and liabilities (whether past, present, future, contingent or otherwise) . . . " *Id.* In September 2001, after consulting legal counsel, Forest accepted Malnove's offer and settled its disputes under the brokerage contract by signing a settlement agreement. See Filing No. 41, Ex. 4, Wolfsberger's Dep. at 28:22- 29:1; 54:2-6; 55:1-4; 55:14-21.

On January 30, 2004, Forest brought this lawsuit claiming that: (1) Malnove fraudulently induced it to enter into the settlement agreement; and (2) ConAgra tortiously interfered between Malnove and Forest's business relationship. Initially, Malnove moved to dismiss Forest's claim for fraudulent inducement on the grounds that Forest could not rescind their settlement agreement without first returning the consideration of $100,000 it received in exchange for the settlement agreement. See Filing No. 5, Malnove's motion to dismiss. Forest responded, claiming that it did not have to return the consideration because it did not seek to rescind the settlement agreement. See Filing No. 8, Brief in Opposition to Motion to Dismiss at 3. Specifically, Forest stated that it sought to affirm the settlement agreement and recover damages from Malnove under a fraud theory. *Id.* In denying Malnove's motion, the court, in a Memorandum and Order, stated: "[b]ecause plaintiff has affirmed the Settlement and is suing Malnove for damages, the court finds that restoration of the consideration received under the Settlement is not required." See Filing No. 23, Court's Memorandum and Order at 4. On April 15, 2005, Malnove and ConAgra filed motions for summary judgment arguing that there were no genuine issues of material fact with respect to Forest's claims and that they were entitled to judgment as a matter of law. As stated above, on November 18, 2005, counsel for Malnove notified this court that

the case against Malnove settled. Pursuant to that notification, the court now denies Malnove's motion for summary judgment, Filing No. 32, as moot. Therefore, the court will now examine only ConAgra's motion for summary judgment.

ConAgra, in its motion, asserts that Forest cannot prove that ConAgra caused Malnove to breach or terminate the brokerage agreement, thus, it cannot prove tortious interference. ConAgra contends that it is entitled to judgment as a matter of law. Forest opposes defendant's motion arguing that it is entitled to bring a claim for tortious interference against ConAgra, thus, summary judgment is not proper. For the reasons stated below, the court determines that ConAgra's motion for summary judgment should be granted.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In order to determine which facts are material, courts should look to the substantive law in a dispute and identify the facts which are critical to the outcome. *Id.* The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth

specific facts that demonstrate the existence of a genuine issue for trial. *Id.* Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Id.* To successfully oppose the motion for summary judgment, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.*

## Discussion

<u>Tortious Interference with a Business Relationship</u>

ConAgra, in its motion, contends that it is undisputed that Forest has affirmed the settlement agreement and that the agreement extinguishes any claims for breach of contract against Malnove. ConAgra argues that, based on the settlement agreement, Forest cannot prove that ConAgra caused Malnove to breach or terminate the brokerage agreement, thus, it cannot prove tortious interference. ConAgra claims that it is entitled to judgment as a matter of law. Forest contends that the settlement agreement does not prevent it from bringing a claim for tortious interference against ConAgra.

The Nebraska Supreme Court has indicated that the necessary elements of tortious interference with a business relationship are: (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Macke v. Pierce,* 661 N.W.2d 313, 317

(Neb. 2003); *Pettit v. Paxton*, 583 N.W.2d 604, 609-610 (Neb. 1998) (citation omitted). The court has also determined "that one of the basic elements of tortious interference with a business relationship requires an intentional act which induces or causes a breach or termination of the relationship." *Id.* In making this determination, the court followed the Restatement (Second) of Torts § 766 (1979), which states: "[o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Id.* In *Pettit,* the plaintiffs, as purchasers, chose to pay an additional $50,000 to a third-party seller to close a transaction because plaintiffs believed that defendants' actions might cause the seller not to perform. *Id.* When plaintiffs later sought to recover the additional $50,000 from the defendants, the court found that since there was no breach of contract between the plaintiffs and the third-party seller, no liability could be imposed upon the defendants for tortious interference. *Id.*

ConAgra contends that Forest's settlement agreement with Malnove releases Malnove from any obligation or liability under the brokerage agreement. The Settlement Agreement states: "[Forest is] not entitled to any other compensation from Malnove for any reason whatsoever, whether pursuant to any written Brokerage Agreement or otherwise and you hereby release Malnove from any and all obligations and liabilities (whether past, present, future, contingent or otherwise) to you." See Filing No. 34, Ex.1(g). ConAgra argues that, based on the settlement agreement, Forest cannot claim that Malnove

6

breached the brokerage contract. ConAgra contends that it is entitled to judgment as a matter of law. The court agrees that the settlement agreement precludes Malnove's claim against ConAgra, because the agreement operates as a complete release and discharge. As a result, Forest cannot claim that ConAgra induced or caused Malnove to breach the brokerage agreement.

As previously indicated, Forest claimed from the beginning of its lawsuit that it sought to affirm its settlement agreement with Malnove. In fact, based on that claim and in denying Malnove's motion to dismiss, the court determined that: "[b]ecause plaintiff has affirmed the Settlement and [was] suing Malnove for damages, the court [found] that [plaintiff's] restoration of the consideration [or $100,000] received under the Settlement [was] not required." See Filing No. 23, Court's Memorandum and Order at 4. Because Forest affirmed the settlement agreement (which releases Malnove from any obligation or liability under the brokerage agreement), Forest cannot contend that ConAgra caused Malnove to breach that same brokerage agreement. Without providing any authority, Forest contends that the settlement agreement is irrelevant and that it could claim tortious interference with a business relationship against ConAgra. However, once Forest released Malnove, it set the measure of damages for any alleged tortious interference. Malnove paid those "damages." Forest cannot prove causation for any additional damages. As the Nebraska Supreme Court noted in *Pettit*: "If the defendant was not interfering directly with the plaintiff, then whatever 'damages' the plaintiff incurred were necessarily incurred as a matter of choice on the part of the plaintiff." *See Pettit,* 583 N.W.2d at 610. Forest cannot have it both ways. *Id.* Forest's claim against ConAgra for tortious interference with a business relationship fails as a matter of law.

7

IT IS, THEREFORE, ORDERED:

1. That Malnove's motion for summary judgment, Filing No. 32, is denied as moot pursuant to the settlement of the case against Malnove only;

2. That ConAgra's motion for summary judgment, Filing No. 30, is granted; and

3. A separate judgment in favor of defendants is entered in conjunction with this Memorandum and Order.

DATED this 23rd day of November, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge